UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
PHILLIP JEAN-LAURENT,

                Petitioner,

    -against-

SUPERINTENDENT James T. Conway,

                Respondent.
---------------------------------------------------------------x

**MEMORANDUM & ORDER**

10 CV 346 (RJD)

DEARIE, Judge.

       Petitioner Phillip Jean-Laurent was convicted in New York Supreme Court (Queens Count), following a jury trial at which he testified, of assault in the second degree, criminal possession of a weapon in the fourth degree and endangering the welfare of a child. The trial evidence established that that petitioner repeatedly struck his wife with the handle of an unloaded revolver while she was holding their eight-month old son. The child was not injured but the wife suffered head lacerations and rib-area bruising. The trial evidence also established while held on bail pending trial, petitioner telephoned his wife numerous times in violation of the terms of a temporary order of protection, resulting in his conviction of four counts of criminal contempt in the second degree.[1]

       Petitioner was sentenced as a second felony offender to a determinate term of seven years on the assault charge along with concurrent one-year terms on each of the remaining charges and three years' post-release supervision. The Appellate Division affirmed his conviction, People v. Jean-Laurent, 51 A.D.3d 818 (2d Dep't 2007), and the New York Court of Appeals denied leave to appeal. People v. Jean-Laurent, 11 N.Y.3d 737 (2008). Petitioner now seeks a writ of habeas

---

[1] The contempt charges were the subject of a separate indictment later consolidated for trial with the principal indictment.

corpus pursuant to 28 U.S.C. § 2254.[2]

For the reasons set forth below, the application is denied and the petition is dismissed.

### CONTROLLING STANDARDS

The requirements for habeas relief under the Antiterrorism and Death Penalty Act of 1996 ("AEDPA"), as elucidated by recent Supreme Court holdings, are well-established and formidable. See, e.g., Bobby v. Dixon, 565 U.S. __, 132 S. Ct. 26 (2011) (per curiam); Renico v. Lett, 559 U.S. __, 130 S. Ct. 1855 (2010). As the Court stated in Renico, in a summary of its fifteen years of AEDPA jurisprudence:

> We have explained that an unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than de novo review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

130 S. Ct. at 1862 (all internal quotations and citations omitted). The Court's post-Renico, *per curiam* distillation of the habeas standard is even more emphatic: "a state prisoner seeking a writ of habeas corpus from a federal court must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Bobby, 565 U.S. at __, 132 S. Ct. at 27 (internal quotation and citation omitted).

Petitioner has not made these extraordinary showings with respect to any of his claims.

---

[2] Online records of the New York State Department of Corrections indicate that petitioner was paroled in September 2010, but because he challenges the underlying convictions his petition is not moot. See generally Spencer v. Kemna, 523 U.S. 1, 8 (1998).

2

# DISCUSSION[3]

## I. The "Structural Error" Claim

Petitioner claims that the trial court committed what he labels "structural error" of constitutional magnitude when it denied his pre-trial request for new counsel. He further claims that that denial left him with no choice but to ask to represent himself, and that the trial court committed constitutional error when it granted that request and allowed petitioner to act as his own counsel, briefly, during a pre-trial appearance. Finally, petitioner makes the inconsistent claim that his request to proceed pro se was authentic and voluntary, but that the trial court's appointment of standby counsel to assist him (during that brief period when he was pro se) unconstitutionally curtailed his exercise of his self-representation right.

Petitioner raised these claims in the supplemental pro se brief he filed with the Appellate Division, which denied the claims summarily as being "without merit." Jean-Laurent, 51 A.D.3d at 819. Petitioner cannot show that the Appellate Division's determination reflects an unreasonable application of Supreme Court law. Indeed, as the record makes abundantly clear, the claims are frivolous.

### A. Denial of Request to Appoint New Counsel

Petitioner complains that the trial court did not properly inquire into the grounds of his dissatisfaction with his appointed counsel Gerald Aroughetti, but the record shows otherwise. Indeed, it appears that petitioner's grievances were entirely misguided.

When petitioner asked the trial court to replace Mr. Aroughetti, his principal complaint was his belief that Mr. Aroughetti had neglected to ask the court to appoint a medical expert to examine the victim's records and had ignored petitioner's desire to seek to reargue a motion to

---

[3] The parties' familiarity with the record is assumed. Portions are discussed only in the context of the legal claim to which they pertain.

inspect grand jury minutes. In response, Mr. Aroughetti reminded the court that it had already appointed a medical investigator and, on the subject of the grand jury minutes, advised the court that he did not believe that grounds for reargument existed. The trial appropriately denied petitioner's request and expressly found that Mr. Aroughetti, who was already petitioner's second court-appointed attorney, was rendering effective representation.

The Appellate Division's rejection of petitioner's claim that the trial court committed constitutional error when it denied petitioner's request to replace Mr. Aroughetti is not a reason to grant habeas relief. There exists no basis for declaring the underlying trial court's determination that Mr. Aroughetti was effective to be a factually unreasonable; likewise, the appellate rejection of the "structural error" claim does not unreasonably apply Supreme Court law. Although the Supreme Court has recognized that the denial of counsel of choice can, in certain circumstances, be considered a "structural error," United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006), it is well established within Sixth Amendment jurisprudence that "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624 (1989). See also Wheat v. United States, 486 U.S. 153, 159 (1988) ("a defendant may not insist on representation by an attorney he cannot afford").

B. Granting of Petitioner's Request to Proceed Pro Se

Petitioner complains that his decision to represent himself was "impetuous and involuntarily compelled," but once again, the record belies his claim.

The subject of self-representation arose after the court denied petitioner's request for substitute counsel. Petitioner announced that he wished "to go pro se on th[e] motion" to

4

reargue. The court explained that petitioner could proceed pro se only "on the case" but not "[o]n a motion." Petitioner then stated, "I want to go pro se." The court asked, "[y]ou really want to represent yourself?" and petitioner replied, "yes, I want to go pro se." The trial court then explained to petitioner, in great detail, the risks, disadvantages and consequences of representing himself (see Tr., June 30, 2004 at 20-24), and asked again, "[i]s it really your desire now to take over management of this case?" Petitioner replied, "[i]t's my decision for you to re-hear my motions." The court explained, again, "Not until I know that you are going to be pro se." Petitioner stated "Yes, I am going to go pro se." The Court also sought input from the prosecutor and Mr. Aroughetti, asking whether either thought there was any legal reason petitioner should not proceed pro se and whether "there [was] any doubt in [their] mind that it['] a voluntary decision on his part." No concerns were voiced. When ultimately authorizing petitioner to represent himself, the Court also appointed Mr. Aroughetti as stand-by counsel.

At the next appearance, on August 14, 2004, petitioner represented himself with Mr. Aroughetti serving as standby counsel. The court noted that it was in possession of petitioner's pro se motion to inspect the grand jury minutes and to dismiss, which it "denied as having been previously decided to [sic] the earlier motion." At the same proceeding, petitioner spoke on his own behalf on the subject of his request for a court-appointed medical examiner. Mr. Aroughetti interjected that the Court had already appointed one, but that petitioner was not happy with the particular physician and "wanted a doctor of his own choosing." Petitioner, speaking on his own behalf, confirmed that he did not need assistance in understanding the terminology in the medical records but rather that he was seeking a physician who would offer an opinion consistent with his defense (namely, that the injuries his wife suffered were "inconsistent with pistol whipping"). The court then denied his request for a second medical expert as "speculative and duplicative."

At this same proceeding, petitioner also argued his other discovery requests and addressed concerns he had with the temporary order of protection. This proceeding appears to mark the extent of petitioner's period of self-representation.[4]

In light of these facts, the Appellate Division's rejection of petitioner's claim that the trial court committed constitutional error by allowing him to represent himself briefly during the pre-trial phase of the case is not contrary to or an unreasonable application of the controlling Supreme Court standards. As petitioner well knows, his voicing of his desire to handle his own defense (whether or not it was partly impetuous in its origination) was the invocation of an important constitutional right that the trial court could not simply reject out of hand. See Faretta v. California, 422 U.S. 806 (1975) ("to accept [representation] against his will . . . deprive[s] [a defendant] of his constitutional right to conduct his own defense"). Based on the record, it is this Court's view that the Appellate Division did not unreasonably apply Faretta when concluding that the trial court's ensuing voluntariness inquiry and warnings to petitioner were constitutionally adequate. See Faretta, 422 U.S. at 835 ("in order competently and intelligently to choose self-representation, [a defendant] should be made aware of the dangers and disadvantages of self-representation"). See also Johnstone v. Kelly, 808 F.2d 214, 216 n. 2 (2d Cir. 1986) (a defendant's request to represent himself "is not equivocal merely because it is an alternative position, advanced as a fall-back to a primary request for different counsel").

---

[4] According to the transcript, at the close of the August 14, 2004 proceeding the matter was adjourned to September 28, 2004, but the next available transcript in the record is for the Sandoval hearing on October 27, 2004, at which Mr. Aroughetti appears to have been serving as counsel of record rather than merely in a standby capacity. The record, however, contains no reference to or discussion of the circumstances surrounding petitioner's return to represented (rather than pro se) status. At trial, which commenced on April 12, 2005, petitioner was represented by Andrew Yerrakadu. The transcript reveals only that Mr. Yerrakadu was appointed approximately three weeks earlier, but does not disclose why Mr. Aroughetti was no longer in the case.

C.   The Role of Standby Counsel

Finally, petitioner complains that during the brief *pre-trial* time he was representing himself (when he was addressing the subjects of the medical expert, grand jury minutes, discovery and the temporary order of protection), Mr. Aroughetti so exceeded his standby role that petitioner's exercise of his Faretta right was unconstitutionally curtailed.

The Appellate Division's rejection of this utterly frivolous claim was not contrary to or an unreasonable application of Supreme Court law. Faretta rights are not violated by the appointment of standby counsel "even over a defendant's objection." McKaskle v. Wiggins, 465 U.S. 168, 179 (1984). Further, because Faretta's primary concern is with a defendant's "right to appear *before the jury* in the status of one defending himself," McKasle, 465 U.S. at 178 (internal quotation and citation omitted), "outside the presence of the jury [Faretta rights] . . . are adequately vindicated . . . if the pro se defendant is allowed to address the court freely on his own behalf." Id. As just noted, during his period of self-representation, petitioner engaged in free, full discourse with the court on numerous subjects of importance to him. It was not unreasonable for the Appellate Division to conclude that Mr. Aroghetti did not vitiate petitioner's limited pre-trial Faretta right simply because he reminded the court that it had already appointed a medical examiner.

II.   **The Confrontation Clause Claim**

Petitioner claims he was denied his rights under the Confrontation Clause by the admission a medical record that includes a statement that his wife made while receiving medical treatment after the beating. The document in question includes the following treating physician's notation: "34 year old patient assaulted by husband and struck with handle of pistol on forehead

7

and right flank." Petitioner presented this claim in his supplemental pro se brief to Appellate Division, which rejected it summarily as being "without merit." Jean-Laurent, 51 A.D.3d at 819.

It was not an unreasonable application of Supreme Court law for the Appellate Division to have concluded that the document was properly admitted as a business record or public record and, therefore, that the Confrontation Clause was not implicated. See Crawford v. Washington, 541 U.S. 36, 56 (2004) ("business records" hearsay exception cited as example of "statements that by their nature [are] not testimonial"). See also Melendez–Diaz v. Massachusetts, 557 U.S. 305, 324 (2009) ( "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial").

Indeed, petitioner's invocation of the confrontation clause is hyperbolic: as he well knows, the maker of the challenged statement is the victim, who testified and was cross-examined. This is precisely the confrontation called for by the Sixth Amendment.

In any event, "'[i]t is well established that violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review, however, and Crawford does not suggest otherwise.'" United States v. Foster, 127 Fed. Appx. 537, 539 (2d Cir. 2005) (quoting United States v. McClain, 377 F.3d 219, 221-22 (2d Cir. 2004)), cert. denied, 546 U.S. 886 (2005). Any such error relating to the admitted medical record would unquestionably have been harmless in light of the strength of the state's case against petitioner. See Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (constitutional error is harmless unless it had a substantial and injurious effect on the jury's verdict).

## III. The *Brady* Claim

Petitioner claims that the state violated its Brady obligation by failing to disclose certain letters that the victim (petitioner's wife) received during the pendency of petitioner's criminal proceeding. Petitioner asserts that he happened to discover their existence only when he received a copy of the transcript of a Family Court proceeding in which his wife's attorney made reference to them.

The claim is frivolous, and the extensiveness with which it was briefed in state court[5] and here on habeas is disconcerting, to say the least, for buried beneath the mounds of paper is this simple fact: the letters in question are described as "anonymous threatening letters" that petitioner's wife believed "were coming from" petitioner. Petitioner offers no conceivable theory under which these materials could have *exculpated* him against the charges of beating his wife, endangering his child, or harassing his wife in violation of the order of protection. It hardly bears stating, therefore, that when rejecting this claim, the state court did not contravene or unreasonably apply Brady v. Maryland, 373 U.S. 83 (1963) or its progeny.

## IV. The Challenge to the Criminal Contempt Convictions

Petitioner argues that his convictions for second-degree criminal contempt are infirm because, in his view, the temporary order of protection ("TOP") he was convicted of violating by

---

[5] Petitioner raised this claim in a post-conviction motion to vacate pursuant to C.P.L. §440. The 440 court determined that petitioner "has failed to establish that the material was in possession of the People, that the material was favorable to him, and that the material would have changed the outcome of the case." People v. Jean-Laurent, Ind. No. 2269-03 (Sup. Ct. Queens Co. Oct. 9, 2008) at 2. The 440 court further determined that "the People have provided proof that [petitioner] was at least aware of the existence of this material prior to trial." Id. The Appellate Division denied leave to appeal the order denying 440 relief. People v. Jean-Laurent, 2008-10891 (Dec. & Order) (2d Dep't Jan. 23, 2009), as did the New York Court of Appeals. People v. Jean-Laurent, (N.Y. Ct. App. May 11, 2009). See generally Exhibits H through P to Declaration of Ashlyn Dannelly in Opposition to the Petition (Docket Entry 5).

9

telephoning his wife from prison was not a valid order. For purposes of casting this as a habeas-worthy "constitutional" claim, petitioner invokes the concept of sufficiency under Jackson v. Virginia, 443 U.S. 307 (1979) and argues that the state failed to prove the threshold element of second-degree criminal contempt, namely, that "a lawful order of the court clearly expressing an unequivocal mandate was in effect." Matter of McCormick v. Axelrod, 59 N.Y.2d 574, 583 (1983). In substance, however, petitioner's challenge to the validity of the state-court-issued order of protection rests entirely on an interpretation of state law and is therefore not cognizable in this Court. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)( "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").[6]

Assuming arguendo that this Court's extremely limited habeas jurisdiction includes the authority to entertain petitioner's challenge to his contempt convictions, that challenge would not be a basis for granting the petition.

Petitioner relies on a mangled, unique-to-him, and wholly flawed interpretation of language in New York's Protection for Victims of Family Offenses Law. The provision in effect at the time in question provided, in pertinent part, that a court "…may issue a temporary order of protection *as a condition of any order of* recognizance *or bail* or an adjournment in

---

[6] As a threshold matter, assuming that the order of protection was valid and in effect, petitioner does not dispute that the state satisfied the other two elements of the crime of second-degree criminal contempt, namely, that he had knowledge of the order's terms and that he knowingly disobeyed them. McCormick, 59 N.Y. 2d at 583. As to knowledge, petitioner's signature appears on the order and when issuing it, the court told petitioner that he was to have "no contact with Sandra Jean-Laurent until 2005" and "[i]f you win your case and your case ends early in your favor, I will terminate this immediately." As to disobedience, the evidence at trial established that, in spite of the order of protection, petitioner contacted his wife by telephone on four separate occasions. During the first, petitioner's wife told him that he should not call her because of the order of protection, to which petitioner responded "F the order of protection." Id. at 438. Petitioner's wife testified that she felt annoyed, alarmed, and threatened by these phone calls, and called 911 to file a report after one of the calls because she felt afraid. During another of the calls, petitioner said to his wife, "if you think I'm going to go do all this time, you must be crazy" and "you better drop this."

10

contemplation of dismissal." C.P.L. § 530.12(1) (emphasis added).[7] Petitioner's argument is that, although the order of protection was issued as a condition of the order that set his bail package, the order did not ever take effect because he never posted bail. In his view, the statutory phrase "as a condition of any order of . . . bail" means that an order of protection takes effect only when a defendant actually posts bail and is released. Under his view, a defendant could elect, for purposes of avoiding the terms of a TOP, not to post bail, and thereby remain free to make harassing and threatening phone calls to the TOP's intended beneficiary.

Merely to posit petitioner's view is to expose its absurdity.

More critically, for habeas purposes, petitioner raised this argument or its equivalent in two Article 78 proceedings in which he sought an order prohibiting the contempt prosecution. Both applications were denied. Jean-Laurent v. Erlbaum, 13 A.D.3d 533 (2d Dep't Dec. 20, 2004) (first Article 78); Jean-Laurent v. Erlbaum, 13 A.D.3d 589 (2d Dep't Apr. 18, 2005) (second Article 78). The New York Court of Appeals, in turn, denied leave to appeal. Jean-Laurent v. Erlbaum, 5 N.Y.3d 713 (Oct. 25, 2005). Petitioner also presented a version of this claim in the pro se supplemental brief to the Appellate Division, which denied it summarily. Jean-Laurent, 51 A.D.3d at 819. Petitioner's formidable task on habeas is to show that, in its multiple rejections of his construction of a state statute, the Appellate Division contravened or unreasonably applied controlling Supreme Court law. This he cannot possibly do.

Again, to the extent it is even proper for this Court to be commenting upon the Appellate Division's construction of a New York statute, this Court's foray into New York jurisprudence has unearthed nothing to conceivably suggest a colorable basis for petitioner's imaginative but

---

[7] In 2007 the statute was amended to expand a court's authority to issue a temporary order of protection not only as a condition of any order of recognizance or bail but also "in conjunction with any securing order committing the defendant to the custody of the sheriff." N.Y. C.P.L. 530.12(1). (McKinney's 2012).

11

nevertheless persistent view that his contempt convictions rest upon an *ultra vires* court order.

## V. The Ineffective Assistance of Counsel Claim

Petitioner's final claim is that Andrew Yerrakuda, who represented him at trial, rendered constitutionally ineffective assistance. The Appellate Division rejected this claim on the merits, finding that petitioner "received meaningful representation." Jean-Laurent, 51 A.D.3d at 819.

Petitioner has not shown that the Appellate Division's finding that he was adequately represented is "contrary to" or an "unreasonable application" of Strickland v. Washington, 466 U.S. 668 (1984). The "contrary to" portion of section 2254 requires little discussion. Although the Appellate Division here relied on People v. Baldi, 54 N.Y.2d 137, 147 (1981), which established New York's "meaningful representation" standard, the Second Circuit has made clear that the Baldi standard is not "contrary to" federal law for section 2254(d) purposes. See generally Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003).

Showing that the Appellate Division unreasonably applied Strickland is a formidable undertaking, to say the least. As the Supreme Court has explained, "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult [because] [t]he standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Harrington v. Richter, 562 U.S. __, __ 131 S. Ct. 770, 788 (2011) (internal quotations and citations omitted). The feature of counsel's performance that appears to be of most concern to petitioner is his having failed to interpose a confrontation clause objection to the admission of the victim's medical records. The absence of any basis for doing so, however (as discussed above), disposes of that branch of the ineffectiveness claim. Petitioner's remaining complaints are of the scattershot, picayune or conclusory variety that reflect some idealized notion of counsel's duties but do not implicate the

Constitutional standard or give this Court reason to question the integrity of the Appellate Division's conclusion that petitioner was ably represented.[8]

## CONCLUSION

Petitioner Philip Jean-Laurent's application for a writ of habeas corpus under 28 U.S.C. §2254 is denied and the petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
July 25, 2012

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge

---

[8] For example, petitioner complains that Mr. Yerrakuda first met with him only the night before jury selection, did not spend enough time consulting with him before and during trial, and failed to consult with an expert witness, but petitioner has not specified how the result of the proceeding was thereby affected. By contrast, the record demonstrates, among other things, that counsel participated in the voir dire, delivered capable opening and closing statements, cross-examined the state's witnesses, and moved to dismiss at the close of the evidence. Further, although convicted on the counts already noted, petitioner was acquitted on the top charges of *first-degree* assault and *first-degree* criminal contempt.